Thomas J. Nolan, Esq., (SBN: 48413)

**Nolan, Armstrong & Barton, LLP**

600 University Ave. \ Palo Alto, Ca. 94301
Tel. (650) 326-2980 Fax (650) 326-9704

Attorney for Defendant
Kenneth Van Aalsburg

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 07 00603 JW |
| Plaintiff, | **DECLARATION OF THOMAS J. NOLAN IN SUPPORT OF MOTION TO RESET SENTENCING DATE FROM SEPTEMBER 8, 2008 TO OCTOBER 13, 2008 OR A DATE THEREAFTER** |
| v. | |
| KENNETH VAN AALSBURG, | |
| Defendant. | |

I, Thomas J. Nolan, declare as follows:

1.     I am the attorney of record for Ken Van Aalsburg in the above-referenced case. I am presently in jury trial in the County of Monterey before the Honorable Stephen Sillman in a special circumstance homicide alleging special circumstance of lying in wait and multiple murder.

2.     The jury was selected on August 20, 2008.

3.     The jury trial is expected to last four weeks, and I will therefore be in trial five days a week, for approximately seven hours a day, in Salinas, California, in the matter entitled *People v. Kenney*, Monterey County Superior Court Case No. CRSS081552A.

1

4.    The date of September 8, 2008 is the first date set for sentencing in this matter.

5.    Objections were filed to the proposed pre-sentence report which was written and prepared in a timely fashion.  Please see Exhibit A for a copy of the letter regarding objections to the proposed report.

6.    It is believed that the objections lodged will require a hearing, and it will undoubtedly require an evidentiary hearing, either to be heard in front of a magistrate judge or this Court to assist in making the determinations as to the appropriate sentencing guidelines.

7.    There was no plea agreement or other agreement as to the sentencing guidelines at the time of the plea.

8.    Request was made of AUSA Joseph Fazioli to agree to a continuance of this matter due to the unavailability of counsel on the date of sentencing.  Mr. Fazioli reported orally, and in a phone call, that he would have no objection if (1) I could set an absolute date when I would be available for sentencing, and (2) that there would not be any continuances for sentencing from the new date set.

9.    I am unable to agree to those items due to the fact that I have no understanding as to how and when the Court would like to conduct, or have a magistrate judge conduct, a hearing on the objections to the pre-sentence report and the calculations of the guidelines.

10.    I have asked AUSA Joseph Fazioli if he knows the procedures that would be used by the Court when contesting the guideline calculations or whether the Court would have the matter set before a magistrate judge for an evidentiary hearing.  Mr. Fazioli was unable to assist me in that determination.

11.    I cannot anticipate what may or may not interfere with the sentencing of Mr. Van Aalsburg on the October 13, 2008 date requested.

12.    I will continue to proceed in an expeditious fashion, to the extent possible while in trial, preparing this matter for a hearing on the sentencing guidelines and

2

DECLARATION OF THOMAS J. NOLAN IN SUPPORT OF MOTION TO RESET SENTENCING DATE

1    ultimately a sentencing hearing.

2         13.    Mr. Van Aalsburg is out of custody.

3         14.    Mr. Van Aalsburg is under pre-trial release conditions and has continued to

4    fulfill all of those conditions.

5         15.    Counsel is not aware of any specific reason related to this case or Mr. Van

6    Aalsburg that counsel would not otherwise accede to a request for a resetting based

7    upon the unavailability of counsel being in a jury trial in another jurisdiction.

8         16.    Based on counsel's schedule, counsel is unavailable until October 13,

9    2008, but would be available October 13, 20, 27, 2008 or any of the Mondays in

10   November.

11        I declare under penalty of perjury that the foregoing is true and correct, except as

12   to those matters stated upon information and belief; and as to those matters, I am

13   informed and believe them to be true.

14        This declaration is executed on this 25th day of August, 2008 at Palo Alto,

15   California.

16                                    _____

17                              FOR   Thomas J. Nolan, Esq.

18

19

20

21

22

23

24

25

26

27

28
                                        3
     DECLARATION OF THOMAS J. NOLAN IN SUPPORT OF MOTION TO RESET SENTENCING DATE

# Nolan, Armstrong & Barton, LLP

THOMAS J. NOLAN \ MICHAEL W. ARMSTRONG \ DANIEL L. BARTON

DIANE DE SEVE \ NICOLE M. RYAN \ EMMA BRADFORD \ DANIEL B. OLMOS

August 12, 2008

**SENT VIA FACSIMILE**
**(408)535-5206**

Officer Aylin Raya
United States Probation Office, Northern District of California
280 S. First Street, Ste. 106
San Jose, CA 95113-3003

RE:    **Objections to Proposed Presentence Report**
       *United States v. Kenneth Van Aalsburg*, No. CR 06-00603-JW

Dear Officer Raya:

I received the Proposed Presentence Report dated August 4, 2008, in the above-mentioned case. I hereby make the following objections:

Paragraph 5:
I object to anything being placed into the report based upon conversations with the lead case agent, because I have not received any notes or memoranda regarding those conversations.

Paragraph 6:
(1)    I object to the first sentence, which states that Mr. Van Aalsburg was "sending, receiving, and saving child pornography" from 2002 to June 2004. I do not believe that there is any evidence that Mr. Van Aalsburg was engaged in a pattern of sending material throughout that period of time.

(2)    I object to the second sentence, which states that 7,600 pornography images were found on Mr. Van Aalsburg's computers. First, there is no proof that all 7,600 images are child pornography. The United States Supreme Court recently reaffirmed that child pornography does not include material that depicts "youthful-looking adult actors or virtual images of children generated by a computer." *United States v. Williams*, 128 S.Ct. 1830, 1836 (2008). Here, there is no evidence regarding which, if any, of the 7,600 images were images depicting actual children, rather than, for instance, virtual images. *See Williams*, 128 S.Ct. at 1837 ("The emergence of new technology and the repeated retransmission of picture files over the Internet could make it nearly impossible to prove that a particular image was produced using real children . . . .") Further, there is no evidence regarding which, if any, of the images that

600 UNIVERSITY AVENUE \ PALO ALTO, CALIFORNIA 94301-2076
TELEPHONE \ (650) 326-2980
FACSIMILE \ (650) 326-9704
www.nablaw.com

EXHIBIT    A

depict actual children contain images of those children posing and displaying their genitals in a lewd manner. Second, there is no evidence regarding which, if any, of the 7,600 images Mr. Van Aalsburg actually possessed. Possession of a visual depiction requires that Mr. Van Aalsburg could have, with reasonable effort, created a visual image from a file at the time that the computer was seized. *United States v. Romm*, 455 F.3d 990, 998-99 (9th Cir. 2006). Here, there is no evidence from which files the government attempted or did create visual images, and what steps they took in order to do so. And, with respect to the two issues addressed here, there is no evidence that the government was able through reasonable means to create images from files that contained actual children displaying their genitals in a lewd manner.

(3)     I object to the third sentence, which states that the images contained "sadistic and masochistic conduct" and images of "adults engaged in sexually explicit conduct with prepubescent minors." In short, which images contained such material? Is there any evidence that these particular images contained real children and, thus, actually constituted child pornography under the statute? If there is evidence that any of these particular images do in fact depict actual children, were these images that Mr. Van Aalsburg possessed at the time of the seizure of his computers? In other words, are these images, if they depict actual children, among those that government agents created from files using reasonable measures?

(4)     I object to the fourth sentence, which states that "18 known victims were identified as known victims from law enforcement databases" were identified from the images. First, the defense is unclear which law enforcement databases were involved. Are these databases identified by the case agent and simply told to the Probation Department? If so, we request notes and/or memoranda regarding those conversations. If the government will rely upon information contained in these databases, the defense is entitled to know which databases they are, who maintains them, and what methods are used to identify and track victims of child pornography. Second, with respect to the images that depict these 18 individuals, is there any evidence that Mr. Van Aalsburg actually possessed, under *Romm*, any of these particular images? If so, which images are they? Did the government create the images from files on Mr. Van Aalsburg's computers? If so, how? By taking what steps?

(5)     I object to the fifth sentence, which again refers to conversations with the case agent, of which I have no notes or memoranda. In addition, if the case agent states that Mr. Van Aalsburg was sending and/or receiving child pornography as early as 2002, which images was he sending and receiving? Is there any evidence that those images depict actual children displaying their genitals in a lewd manner? Is there any evidence that Mr. Van Aalsburg possessed those particular images?

Paragraph 7:
I object to the characterization of the material that the juvenile in Fresno was "distributing." Is there any evidence that the material this individual distributed contained actual child pornography depicting real children?

Aylin Raya
August 12, 2008
Page 3 of 8

Paragraph 8:
I object to this paragraph to the extent that it characterizes the material sent and received between the juvenile in Fresno and Mr. Van Aalsburg as child pornography. Again, which images constitute this material? Of those images, is there any evidence that they depict actual children? Is there any evidence that Mr. Van Aalsburg possessed any of the files sent by the juvenile? Is there any evidence that the files could be made into visual depictions using reasonable measures? Did government agents produce visual depictions from the files, and, if so, by what means?

Paragraph 9:
The defense objects to the characterization of the material that Mr. Van Aalsburg sent via electronic mail from June 19 to June 20, 2004, as child pornography. Is there any evidence that the particular images and videos contained in or attached to the email depict actual children? Are these images and videos among those that depict the 18 individuals referred to in paragraph 6? The defense also objects to the last sentence of the paragraph, which identifies 65 images and two videos as containing "the depiction of minors engaged in sexually explicit conduct." Is there evidence that this particular material contains visual images of actual children involved in the conduct described? Is there evidence that this material depicts any of the 18 individuals identified in paragraph 6?

Paragraph 10:
(1) I object to the first sentence. In particular, I object to the description of the images in the AOL folder as being "those of prepubescent minors engaged in sexually explicit conduct, including images of the sexual penetration of young children, sodomy of toddlers, and images of sadistic and/or masochistic conduct." There is no evidence regarding whether those particular images of actual children. Second, there is no evidence regarding whether the files were actual images, or whether they were files that required some action to be taken to convert them into images. If an action was required to convert them into images, what was that action?

(2) I object to the second and third sentences, which describe an image of a "prepubescent female naked from the mid section down, lying on her back with her legs spread open, exposing her genitalia." There is no evidence that this image depicts an actual child, rather than, for instance, a virtual or digital image created by a computer.

(3) I object to the fourth sentence, which describes a video of a prepubescent female performing oral sex on an adult male. As described in the previous paragraph, there is no evidence that this image depicts an actual child.

Paragraph 11:
(1) I object to the first sentence, which describes an email that Mr. Van Aalsburg received on June 20, 2004, "containing eight images of minors engaged in

3

Aylin Raya
August 12, 2008
Page 4 of 8

sexually explicit conduct." There is no evidence that these images conained depictions of actual children. If any of the images did depict actual children, there is no evidence that, at the time that Mr Van Aalsburg's computers were seized, he possessed these particular images. Where on Mr. Van Aalsburg's computers were these particular images? Did the government take steps to produce images from the particular files? What steps did the government take to do so?

(2) I object to the second, third, and fourth sentences, which describe two images that Mr. Van Aalsburg received in the June 20, 2004, email. Again, did these two particular image files depict actual children, rather than virtual images created by a computer? If either of the two files did contain a depiction of an actual child, did Mr. Van Aalsburg possess that particular image on the date that the government seized his computer? If the government took steps to create an image from either file, what steps did it take?

Paragraph 13:

I object to two portions of this paragraph. First, I object to the sentence that describes the "sampling of 700 images" that was sent to the ICE CyberCrimes Center. The defense has not been informed regarding which 700 images were sent. From which computer were the images sent? From where in the computers were the images taken? Did government agents take steps to create these images from files and, if so, what steps? In other words, did Mr. Van Aalsburg possess any of these images on the date of the seizure of the computers? I also object to the brief description of the NCVIP, because the defense has been given no information regarding how this program works, and who maintains it. For instance, the paragraph states that the programs tracks "child pornography magazines," but it does not describe what steps the program takes to determine which images in the child pornography magazines contain depictions of actual children displaying their genitals in a lewd manner, or otherwise performing sexual acts. If the methods utilized by the program are deficient in this regard, any comparative analysis it performs is useless. In addition, it does not describe how the program tracks "known child victims"; it does not describe, for instance, whether these victims are alive and, thus, still able to be harmed by the continued viewing of their images.

Paragraph 14:

I object to the description of the images and videos found on Mr. Van Aalsburg's computer as containing child pornography, because there is no evidence regarding which of the files depict images of actual children, rather than, for example, virtual images created by a computer. Further, there is no evidence that, if any of the images did contain depictions of real children, Mr. Van Aalsburg possessed those particular images at the time of the seizure of his computer. If there is evidence that any of the images depicted actual children, where on the computers were these files, and what steps did the government take to convert the files into visual images? Finally, the last sentence states that, of all of the images on Mr. Van Aalsburg's computers, there were only 18 images that matched the NCVIP. Aside from my objections to the use of the NCVIP, about which I received almost no information, does this mean that, based upon

4

Aylin Raya
August 12, 2008
Page 5 of 8

all of the resources utilized by the government in this case, only 18 of the 7,600 images are known to contain actual child pornography? If these 18 images do in fact contain child pornography, where were these particular images found? In other words, did Mr. Van Aalsburg possess these particular images under *Romm*?

Paragraph 17:

    (1) I object to the first sentence, which states that "over 7,000 images of child pornography were found on the defendant's computers." Preliminarily, it appears from this report that only 700 images were sent to ICE for forensic analysis. Of those 700 images, according to this report, only 18 images contained depictions of "known victims." Although the defense challenges the assertion that these 18 images contain depictions of actual children, for the reasons stated above, this means that the government could not confirm that a vast majority of the images contain actual child pornography. And, there is no evidence regarding whether the 18 images that the government now contends contain actual child pornography were possessed by Mr. Van Aalsburg at the time of the seizure of his computer.

    (2) I object to the second sentence. Specifically, there is no information regarding which particular images satisfy the named enhancements. Do the images that purportedly satisfy the named enhancements contain depictions of actual children? Are they among the 18 images that the government program identified? Are they among the 700 images that were analyzed? If they are among the 700 image sampling but not among the 18 identified by NCVIP, will the government concede that they do not contain actual child pornography, rather than, for instance, virtual images created by a computer? If they are not amont the 700 images sent to ICE, does that mean that they have not been analyzed at all? Further, there is no evidence that Mr. Van Aalsburg possessed the images that purportedly satisfy the named enhancements.

    (3) I object to the third through sixth sentences, which address the "vulnerable victim" enhancement. There is no information regarding which image or images purportedly satisfy the this enhancement. Do these particular images contain actual child pornography? If so, did Mr. Van Aalsburg possess, under *Romm*, the particular image(s) at the time that his computers were seized? Are these images among the 700 that the government sent for analysis? Are they among the 18 that the government contends it can prove contain actual child pornography according to its database?

Paragraph 18:

For the reasons stated in my object to paragraphs 6 and 13, I object to the description of the 18 victims identified by the NCVIP.

Paragraph 19:

    (1) I object to the first sentence. Increasing a market for child pornography has never been identified, either by Congress or by the United States Supreme Court, as a harm that may be attributable to a defendant in a child

pornography case.  Rather, as *Williams* recently reaffirmed, the only harm
that may be attributable to a defendant who possesses actual child
pornography is the marginal harm to the victim that results from the
defendant's own viewing of the pornographic image.  Accordingly, neither the
government nor the Court may attribute to Mr. Van Aalsburg the harm and
exploitation that undoubtedly does occur to a victim when an actual
pornographic image or video is taken, or any effect on the market for such
material that viewing such an image has.

(2) For similar reasons, I object to the second sentence.  I also do not understand
the meaning of the second sentence.  Is there any evidence or authority for
the statement that possession of child pornography "reinforces the range of
sexually deviant behaviors involving degrees of actual or potential
victimization?"

(3) I object to the third sentence.  There is no basis for the "conclusion" that is
stated, and there is no evidence linking this summary conclusion to the
specific facts of this case or to Mr. Van Aalsburg.

Paragraphs 20 and 21:
I object to these paragraphs because there is no indication whether these two particular
victims have any relationship to this case.  Are they depicted in the images involved in
this case?  When were these statements taken?  Were they taken before or after the
conduct giving rise to this case?  If they were taken before, or if they involve victims not
connected to this case, how can they possibly be attributable to Mr. Van Aalsburg?

Paragraph 27:
I object to the two-level increase, for the reasons stated above.  There is no evidence
regarding which image is being used as a basis for this enhancement, and there is no
evidence regarding whether any image that could be used for this enhancement
contains a depiction of an actual child.  Further, there is no evidence that Mr. Van
Aulsbut possessed any image that could be used for this enhancement at the time that
his computers were seized.

Paragraph 28:
I object to this five-level increase.  There is no evidence that any image that could form
the basis for this enhancement contains actual child pornography, rather than, for
instance, virtual images created by a computer.  Specifically, there is nothing illegal
about distribution of material that does not contain depictions of actual children; such
activity is clearly protected by the First Amendment, and may not be criminalized.  *See*
*Williams*, 128 S.Ct. 1830.

Paragraph 29:
I object to this four-level increase.  Again, there is no evidence that any image that could
form the basis for this enhancement contains actual child pornography, and there is no
evidence that Mr. Van Aalsburg actually possessed, at the time that his computers were
seized, any image that could be used here.

Aylin Raya
August 12, 2008
Page 7 of 8

Paragraph 30:
I object to this two-level increase.  There is no evidence that any image that could form the basis for this enhancement contains actual child pornography, and there is no evidence that Mr. Van Aalsburg actually possessed, at the time that his computers were seized, any image that could be used here.  There is no evidence that, for instance, the images described in paragraphs 9 through 11 contain actual child pornography, rather than, for instance, virtual images created by a computer.

Paragraph 31:
I object to this five-level enhancement.  Again, leaving aside the defense objections regarding the use of NCVIP and its accuracy and viability, even according to the government that program could identify only 18 images that contained images of known victims.  There is no evidence contained in this report that Mr. Van Aalsburg possessed anywhere near 600 images of actual child pornography.

Paragraph 32:
I object to this two-level enhancement.  There is no evidence that the image identified as forming the basis for this enhancement contains a depiction of actual child pornography, and there is no evidence that Mr. Van Aalsburg actually possessed, under *Romm*, that image at the time that the government seized his computers.

Paragraph 35:
Based upon my objects to the foregoing enhancements, I object to the adjusted offense level of 38.  Because there is no evidence to support the enhancements, the adjusted offense level should be equal to the base offense level of 18.

Paragraphs 38 and 40:
Based upon my objections to the foregoing enhancements, the adjusted and total offense level should each be 15.  (XXX – is there an additional reduction?)

Paragraph 74
I object to the Total Assets figure, which is $1,025,570.00.  That figures appears to derive from a double-counting of the value of Mr. Van Aalsburg's home.  In addition, Mr. Van Aalsburg no longer has the life insurance described in Note C.  Mr. Van Aalsburg's net worth should be adjusted accordingly.

Paragraphs 92 and 93:
For the foregoing reasons, I object to the description of the material as child pornography and, in particular, to the numbers of pornographic images and to the description of the images in paragraph 93.  There is no evidence that these particular images, and the number of images from paragraph 92 contain depictions of actual children.  Further, there is no evidence regarding which particular images Mr. Van Aalsburg possessed at the time that the government seized his computers.

7

Aylin Raya
August 12, 2008
Page 8 of 8

Paragraph 94:
I object to the assertion that Mr. Van Aalsburg "appears to have minimal insight as to the seriousness of the offense." Based upon the objections contained herein, I do not believe that the seriousness of Mr. Van Aalsburg's offense has been accurately described or determined, and I therefore do not believe that Mr. Van Aalsburg's insight thereto should be critiqued absent such a description or determination.
I look forward to your responses to my objections. I hope that there is way that we can reach resolution regarding many, if not all, of them without the necessity of a formal hearing.

After considering my objections, please let me know how you wish to proceed.

Thank you for considering these objections. Please do not hesitate to contact me if you have any questions or concerns.

Very truly yours,

Nolan, Armstrong & Barton, LLP

Thomas J. Nolan

cc: Assistant United States Attorney Joseph A. Fazioli

8